**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison L. Mangiatordi (AL 1020)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AMIDOU WANGO and LARBA BEOGO,** **Individually and on Behalf of All Others** **Similarly Situated,** <br><br> **Plaintiffs,** <br><br> -against- <br><br> **POTATO FARMS LLC d/b/a AMISH** **MARKET, TRIBECA MARKET LLC d/b/a** **AMISH MARKET, and TAPPS** **SUPERMARKETS, INC., Jointly and** **Severally,** <br><br> **Defendants.** | **CLASS & COLLECTIVE** **ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

     Plaintiffs Amidou Wango and Larba Beogo (the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## I.     INTRODUCTION

     1.     Defendants own and operate a grocery store doing business under the trade name "Amish Market" located in the TriBeCa neighborhood of Manhattan.

2.      Plaintiffs are former porters/delivery employees at Amish Market, who regularly worked over 40 hours each week.  For their work, Plaintiffs were paid an hourly wage which did not compensate them for all hours worked at the minimum wage and did not provide them with overtime premium pay for hours worked over 40 each week. In addition, Defendants failed to provide Plaintiffs with a wage notice and unlawfully withheld gratuities to which the Plaintiffs and Defendants' other tip-eligible employees are entitled.

3.      Plaintiffs also did not receive spread-of-hours premiums when they worked shifts that exceeded a spread of ten (10) hours per day.

4.      Finally, Plaintiffs did not receive all of the gratuities left for them by customers when they would make deliveries.

5.      Plaintiffs bring this action to recover unpaid minimum wage and unpaid overtime premiums owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*  Plaintiffs also bring claims for unpaid spread-of-hours premiums, unpaid gratuities, and for failure to provide proper wage notices pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

6.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees who worked for Defendants and their NYLL claim on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to

28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.    THE PARTIES

**A.    Plaintiffs:**

10.     Plaintiff Amidou Wango ("Wango") has been, at all relevant times, an adult individual residing in Kings County, New York.

11.     Plaintiff Larba Beogo ("Beogo") has been, at all relevant times, an adult individual residing in Bronx County, New York.

12.     Throughout the relevant time period, Plaintiffs performed work for Defendants at their grocery store, Amish Market, located at 53 Park Place, New York, NY 10007.

13.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**B.    Defendants:**

14.     Potato Farms LLC is an active New York Corporation doing business as "Amish Market Tribeca" with its principal place of business at 53 Park Place, New York, NY 10007.

15.     Tribeca Market LLC is an active New York Domestic Limited Liability Company doing business as "Amish Market Tribeca" with its principal place of business at 53 Park Place, New York, NY 10007.

16.     Tapps Supermarkets, Inc. is an active New York Corporation with its principal place of business at 575 Grand Street, Brooklyn, NY 11211.

17.     The corporate defendants listed in paragraphs 14 through 16 are hereinafter referred to collectively as "Amish Market" or the "Defendants."

18.     At all relevant times, each of the Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

19.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA, 29 U.S.C. § 203(d).

20.     At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

21.     Upon information and belief, at all relevant times, each of the Defendants have had gross revenues in excess of $500,000.00

22.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

## IV.     COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since November 6, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees (the "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally required minimum wage or overtime premium payments.

25.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## V.    NEW YORK CLASS ACTION ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All individuals employed by Defendants in New York at any time since November 6, 2011 and throughout the entry of judgment in this case (the "Class Period") who worked as non-management employees (the "Class Members").

27.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

28.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

29.     Upon information and belief, there are in excess of forty (40) Class Members.

30.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not

limited to:

    a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

    b.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members at least minimum wage for all hours worked each workweek;

    c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums when they worked more than forty (40) hours in a given workweek;

    d.    whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

    e.    whether Defendants failed to provide Plaintiffs and the Class Members with a proper wage notice at the beginning of their employment and/or on February 1 of each year, as required by the NYLL;

    f.    whether Defendants unlawfully withheld a portion of Plaintiffs and Class Members' tips/gratuities;

    g.    whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

    h.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.    The answers to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

32.    <u>The Plaintiffs' claims are typical of the Class Members' claims</u>. The Plaintiffs, like all Class Members, are or were employees of Defendants who work or worked for Defendants pursuant to their corporate policies. The Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours or a split shift, were not provided with wage notices on the date they were hired or on February 1 of each subsequent year, and were not paid all of their earned tips/gratuities. If Defendants are liable to the Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

33.    <u>The Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between the Plaintiffs and the Class Members, and the Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

34.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

35.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

36.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## VI.    STATEMENT OF FACTS

### A.    Defendants' Supermarket

37.    At all relevant times, Defendants have been in the grocery store business.

38.    According to the Amish Market Facebook page, Amish Market was founded in 1991 and is "New York's premier gourmet market. Our market, cafe & catering are built around the love of great food & our passionate chefs & talented staff." (www.facebook.com/pg/AmishMarketTribeca/about/)

39.    "With standards for supermarkets rising and customers no longer willing to accept anything but the freshest products, Amish Market has taken these issues to heart. This is why New York's fine food lovers have made Amish Market one of the most popular grocery stores in the city." (*Id.*)

40.    Upon information and belief, Defendants applied the same employment policies, practices and procedures, including the unlawful policies complained of herein, to all porters/delivery employees and other non-management employees.

41.    Amish Market is open seven (7) days per week from six in the morning (6:00 am) until nine-thirty in the evening (9:30 pm).

### B.    Plaintiffs' Work for Defendants

42.    **Plaintiff Wango** worked for Amish Market as a porter and delivery employee from in or around March 2017 through on or about September 15, 2017 (the "Wango Employment Period").

43.    When Wango was hired, he was told he would be working as a delivery employee. Once Wango began working, however, his duties were primarily porter duties, and he would spend a minimal amount of time each day performing deliveries.

44.    Throughout the Wango Employment Period, Wango had a different schedule each week but typically was scheduled to work five (5) days per week, for a total of approximately over fifty (50) hours per week.

45.    For his work, from the beginning of the Wango Employment Period through approximately September 15, 2017, Wango was told he would be paid six dollars and eighty cents ($6.80) per hour plus some tips.

46.    Despite the fact that Wango occasionally would make deliveries and receive tips, he would not be able to retain all of his tips/gratuities left by customers.

47.    Customers would inform Wango that they left a tip of a certain amount, however, when he received his tips from Defendants, he did not typically receive the full amount of the tips left for him.

48.    While Wango would typically work in excess of approximately fifty (50) hours in a week, he would typically only be paid for thirty-five to forty (35-40) hours in a week.

49.    As such, Wango was not typically paid for hours worked in excess of forty (40) in a week.

50.    While Wango's shifts were typically in excess of ten (10) hours, Wango never received an extra hour's pay at minimum wage for these shifts.

51.    Throughout the relevant time period, Plaintiff Wango was never provided with a wage notice on his date of hire and/or February 1 of each year.

52.    **Plaintiff Beogo** worked for Amish Market as a porter and delivery employee from on or about December 12, 2016 though on or about September 15, 2017 (the "Beogo Employment Period").

53.    When Beogo was hired, he was told he would be working as a delivery employee.

Once Beogo began working, however, his duties were primarily porter duties, and he would spend a minimal amount of time each day performing deliveries.

54.    Throughout the Beogo Employment Period, Beogo had a different schedule each week but typically was scheduled to work five (5) days per week, for a total of in excess of approximately fifty (50) hours per week.

55.    For his work, from the beginning of the Beogo Employment Period through approximately September 15, 2017, Beogo was told he would be paid six dollars and eighty cents ($6.80) per hour plus some tips.

56.    Despite the fact that Beogo occasionally would make deliveries and receive tips, he would not be able to retain all of his tips/gratuities left by customers.

57.    Customers would inform Beogo that they left a tip of a certain amount, however, when he received his tips from Defendants, he did not typically receive the full amount of the tips left for him.

58.    While Beogo would typically work over fifty (50) hours in a week, he would typically only be paid for thirty-five to forty (35-40) hours in a week.

59.    As such, Beogo was not typically paid for hours worked in excess of forty (40) in a week.

60.    While Beogo's shifts were typically in excess of ten (10) hours, Beogo never received an extra hour's pay at minimum wage for these shifts.

61.    Throughout the relevant time period, Beogo was never provided with a wage notice on his date of hire and/or February 1 of each year.

**C.    Defendants' Unlawful Corporate Policies**

62.    Plaintiffs and the Collective Action Members were paid by the same corporate

policies of Defendants, including failing to pay minimum wage, overtime premiums, spread-of-hours premiums, withholding gratuities, and failing to provide proper wage notices.

63.     Defendants did not provide Plaintiff or the Collective Action Members with proper wage notices at the time of hire or by February 1 of each year.

64.     Plaintiffs were not paid at the legally required minimum wage rate for all hours worked.

65.     Defendants did not provide a notice of tip credit to Plaintiffs.

66.     Despite the fact that Plaintiffs typically worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) times their hourly rate.

67.     Despite the fact that Plaintiffs often worked shifts of over ten (10) hours, Plaintiffs were not paid spread-of-hours premiums consisting of one (1) extra hour of minimum wage for each day when Plaintiffs worked in excess of ten (10) hours per day.

68.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

69.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.    Defendants have failed to pay the full minimum wage, and improperly took the tip credit.

71.    By failing to pay minimum wage for all hours worked Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 203(m), 206 and 215 (a)(2).

72.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

73.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff sand the Collective Action Members to suffer loss of wages and interest thereon. By failing to pay Plaintiffs and the Collective Action Members for all hours worked and failing to notify Plaintiffs and the Collective Action Members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid overtime premiums, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT-UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and Collective Action Members)**

74.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

76.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

77.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and Class Members)**

78.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

80.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and Class Members)**

81.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

83.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

## FIFTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – UNLAWFULLY WITHHELD GRATUITIES</u>
### (Brought on Behalf of Plaintiffs and Class Members)

84.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.     Defendants willfully violated the rights of the Plaintiffs and the Class Members by unlawfully demanding, receiving, pooling, handling, counting and distributing tips paid by customers, in violation of Article 6 of NYLL and specifically N.Y. Comp. Code R. & Regs. tit. 12 § 146-2.14(f).

86.      Due to the Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, liquidated/punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>
### (Brought on Behalf of Plaintiffs and Class Members)

87.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day

designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

89.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiffs and Class Members)

90.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

92.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are

entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of Plaintiffs' NYLL claims as a Fed. R. Civ. P. 23 class action and appointing Plaintiffs and their counsel to represent the Class Members;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

h.  An award of compensatory damages as a result of the Defendants' failure to pay spread-of-hours premiums compensation pursuant to the NYLL and supporting regulations;

i.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay spread-of-hours premiums compensation pursuant to the NYLL and supporting regulations;

j.  An award of fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1) pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiffs and each of the Class Members as provided for by NYLL, Article 6 § 198(1-b);

k.  An award of prejudgment and post-judgment interest;

l.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      November 6, 2017

                        Respectfully submitted,

                        **PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Alison L. Mangiatordi (AL 1020)
mangiatordi@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Amish Market, Tapps Supermarkets Inc., Tribeca Market, LLC, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____
Signature

Aniiou WanGo
_____
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Amish Market, Tapps Supermarkets Inc., Tribeca Market, LLC, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____
Signature

_LARBA  BEOGO_____
Printed Name