# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**  SEPTEMBER 20, 2018
PELTON@PELTONGRAHAM.COM

**VIA ECF AND EMAIL**

Honorable Richard J. Sullivan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007
sullivanNYSDchambers@nysd.uscourts.gov

    Re: *Wango, et al. v. Potato Farms LLC, et al.*
         <u>Civil Action No. 17 Civ. 8585 (RJS)</u>

Dear Judge Sullivan:

    This firm represents named plaintiffs Amidou Wango, Larba Beogo (together "Named Plaintiffs"), and opt-in plaintiffs Tiguiani Kiema, Karim Kabore, Louis Guigma, V. Gislain Affognon, Mahamadi Bougouma and Ragnag Sawadogo ("Opt-in Plaintiffs" and, together with Named Plaintiffs, "Plaintiffs") in the above-referenced matter against Defendant Tapps Supermarket, Inc. d/b/a Amish Market ("Defendant" or "Amish Market"). This letter is submitted jointly with Arthur J. Robb, Esq., counsel for Defendant, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**     **Introduction and Procedural History**

    Named Plaintiffs filed the Class and Collective Action Complaint on November 6, 2017 on behalf of themselves and other porters/delivery employees and non-management employees at Defendants' grocery store, seeking to recover under the FLSA and New York Labor Law ("NYLL") for unpaid minimum wage, overtime premium pay, spread-of-hours premiums, withheld gratuities, and for failure to provide wage notices. (Dkt. No. 1). On January 11, 2018, Plaintiffs voluntarily dismissed against Potato Farms LLC and Tribeca Market LLC. (Dkt. No. 21). On January 16, 2018, the only remaining defendant, Tapps Supermarket, Inc. filed its Answer, denying all material allegations. (Dkt. No. 23).

On February 22, 2018, the parties appeared for an initial conference with Your Honor, where the parties consented to distribute § 216(b) collective action notice. Notice was mailed to current and former employees. A total of six (6) opt-in plaintiffs submitted their consents. (Dkt. Nos. 14, 15, 36-39). The parties agreed to engage in mediation after the opt-in period through the Southern District of New York's Mediation Program. As such, Your Honor referred the parties to the mediation office.

Parties have exchanged Rule 26(a)(1) initial disclosures and defendants have responded to plaintiffs' first interrogatories and document demands with respect to the Named Plaintiffs, as well as provided documents in their possession regarding the hours worked and wages paid of the Opt-in Plaintiffs. Based on such documents as well as Plaintiffs' best recollection of hours worked and wages paid where the records lacked, Plaintiffs' counsel created a damages analysis.

The parties participated in a mediation with mediator Giulio Zanolla, L.L.M., Esq. on August 13, 2018, where an agreement was reached on all issues. (Dkt. No. 40).

## II.  The Settlement Accounts for Litigation Risk and Compensates Plaintiffs for Alleged Substantial Damages

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendant's potential liability. Plaintiffs alleged that they were paid below the applicable minimum wage rate for all hours worked and that they worked an average of fifty-one (51) hours a week but were not paid at the proper overtime premium rate for hours worked in excess of forty (40) in a week. Plaintiffs additionally alleged that they did not receive all of their tips which were paid on credit cards. Moreover, Plaintiffs allege that they were not paid spread-of-hours premiums when they worked shifts in excess of ten (10) hours per day. Finally, Plaintiffs allege that they did not receive a wage notice when hired or annually.

Defendants have vigorously denied Plaintiffs' allegations, especially their claims for unpaid tips, but also dispute their claims for unpaid minimum wages and overtime premiums due to their allegations that Plaintiffs should have been paid the tipped minimum wage. Plaintiffs would strongly dispute the applicability of the tipped minimum wage.

Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after full discovery and significant motion practice, if not a trial. Continued litigation would necessitate dispositive motions on certain of the disputed legal issues discussed above. Defendants would strongly oppose such motions and would have sought to decertify the collective action. Based on these disputes, the parties engaged in good-faith, arms-length settlement negotiations, regarding not only Plaintiffs' FLSA claims, but also their pendant state law claims.[1]

As set forth above, Plaintiffs' counsel created a damages analysis based on Defendants' records, when available, and Plaintiffs' best estimates of the hours that they worked and the wages they were paid. This analysis resulted in approximately $34,354.19 in unpaid minimum wages and

---

[1] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

overtime premiums and spread-of-hours premiums. Plaintiffs' damages analysis also includes damages of $11,743.57 in unpaid tips damages and $35,650.00 for failure to provide wage notices as well as $45,997.76 in liquidated damages and $9,537.33 in interest. Thus, the settlement amount (i.e., $40,000.00) is higher than Plaintiffs' alleged unpaid wage damages (not including tips, wage notice, liquidated damages, interest and penalties). The settlement therefore represents a substantial portion of Plaintiffs' alleged damages, which would be the anticipated recovery if Plaintiffs received a favorable outcome at trial under both federal and state law. While it does not compensate Plaintiffs for all of their unpaid tips, wage notice statutory damages, liquidated damages, penalties, and all of their attorneys' fees in addition to the damages, the parties believe this is a fair recovery based on the risks associated with establishing the calculated damages and the risks associated with proceeding to trial, all which were a substantial factor in ultimately reaching the settlement number that was agreed to by the parties.

### III.   Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $40,000.00 (the "Settlement Amount"). Of that amount, $13,869.19 is payable to Plaintiffs' counsel, including $1,243.90 in expenses for counsel's costs for filing and service of the complaint and mailing of the § 216(b) notice, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $14,162.53). The remaining $25,837.47 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release of claims for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17,

2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting Plaintiffs to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

## IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Declaration of Brent E. Pelton, Esq. (Exhibit B), as of September 20, 2018, Plaintiffs' counsel had spent more than 86 hours in prosecuting and settling this matter, resulting in a lodestar of $25,975.48. A summary of Plaintiffs' Counsel's fees and costs are attached hereto as Exhibit C. Plaintiffs' counsel had spent $1,243.79 in actual litigation costs. The portion of the settlement amount that plaintiffs seek as attorney's fees (i.e. $14,162.53) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs in the retainer agreement and opt-in consents. The retainer agreement and opt-in forms between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District, which customarily has slightly lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendant take no position with respect to counsel's request for attorneys' fees.

### V.     The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[2] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement).  In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over nearly a year, including a lengthy mediation. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial recovery of Plaintiffs' unpaid wages. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\*     \*     \*     \*     \*

In sum, it is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the parties. This is because the Agreement: (1) fairly accounts

---

[2] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred.  *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

for Plaintiffs' possible recovery and Defendant's ability to mitigate or eliminate same; (2) enables the parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

| **PELTON GRAHAM LLC** | **CLIFTON BUDD & DEMARIA, LLP** |
|---|---|
| By: */s/ Brent E. Pelton* <br> Brent E. Pelton <br> Taylor B. Graham <br> Alison L. Mangiatordi <br> 111 Broadway, Suite 1503 <br> New York, NY 10006 <br> Telephone: (212) 385-9700 <br> Facsimile: (212) 385-0800 | By: */s/ Arthur J. Robb* <br> Arthur J. Robb <br> The Empire State Building <br> 350 Fifth Avenue, 61st Floor <br> New York, NY 10118 <br> Telephone: (212) 687-7410 <br> Facsimile: (212) 687-3285 <br><br> *Attorneys for Defendant Tapps Supermarket, Inc.* |
| *Attorneys for Plaintiffs* | |

Enclosures